# 25-1705, 25-1706

## United States Court of Appeals for the First Circuit

DINNER TABLE ACTION; FOR OUR FUTURE; ALEX TITCOMB,

*Plaintiffs-Appellees,*

v.

WILLIAM J. SCHNEIDER, in the official capacity as Chairman of the Maine Commission on Governmental Ethics and Election Practices; DAVID R. HASTINGS, III, in the official capacity as a Member of the Maine Commission on Governmental Ethics and Election Practices; DENNIS MARBLE, in the official capacity as a Member of the Maine Commission on Governmental Ethics and Election Practices; BETH N. AHEARN, in the official capacity as a Member of the Maine Commission on Governmental Ethics and Election Practices; AARON M. FREY, in the official capacity as Attorney General of Maine; SARAH E. LECLAIRE, in the official capacity as a Member of the Maine Commission on Governmental Ethics and Election Practices,

*Defendants-Appellants,*

EQUAL CITIZENS; CARA MCCORMICK; PETER MCCORMICK; RICHARD A. BENNETT,

*Defendants.*

* * *

DINNER TABLE ACTION; FOR OUR FUTURE; ALEX TITCOMB,

*Plaintiffs-Appellees,*

v.

EQUAL CITIZENS; CARA MCCORMICK; PETER MCCORMICK; RICHARD A. BENNETT,

*Defendants-Appellants,*

WILLIAM J. SCHNEIDER, in the official capacity as Chairman of the Maine Commission on Governmental Ethics and Election Practices; DAVID R. HASTINGS, III, in the official capacity as a Member of the Maine Commission on Governmental Ethics and Election Practices; DENNIS MARBLE, in the official capacity as a Member of the Maine Commission on Governmental Ethics and Election Practices; BETH N. AHEARN, in the official capacity as a Member of the Maine Commission on Governmental Ethics and Election Practices; AARON M. FREY, in the official capacity as Attorney General of Maine; SARAH E. LECLAIRE, in the official capacity as a Member of the Maine Commission on Governmental Ethics and Election Practices,

*Defendants.*

Appeal From the United States District Court for the District of Maine

No. 1:24-cv-00430-KFW (Karen Frink Wolf, J.)

## BRIEF OF AMICUS CURIAE ALBERT ALSCHULER, LAURENCE TRIBE, AND NORMAN EISEN IN SUPPORT OF APPELLANTS AND REVERSAL

Jason Harrow
(*counsel of record*)
  GERSTEIN HARROW LLP
  12100 Wilshire Blvd. Suite 800
  Los Angeles, CA 90025
  (323) 744-5293
  jason@gerstein-harrow.com

Dated: October 29, 2025          *Counsel for Amici*

ii

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .................................................................... i

TABLE OF AUTHORITIES ................................................................ ii

INTEREST OF THE AMICI CURIAE ................................................... 1

SUMMARY OF ARGUMENT................................................................ 2

ARGUMENT ...................................................................................... 5

I.    The *SpeechNow* Syllogism Between Expenditures And Contributions Is Incorrect As A Matter Of Law And Logic.............5

II.   The Statement in *Citizens United* That *SpeechNow* Relied on Was Dictum.................................................................................10

III.  *SpeechNow* Misinterpreted the Dictum on Which it Relied..........13

IV.   Experience Since *SpeechNow* Has Revealed the Corrupting Effect of Unlimited Contributions to Super PACs........................16

CONCLUSION...................................................................................21

CERTIFICATE OF COMPLIANCE ...................................................22

# TABLE OF AUTHORITIES

### Cases

*Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam) ..................... 4, 6, 14, 17

*Cal. Med. Ass'n v. FEC*, 453 U.S. 182 (1981)........................................... 4

Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009)........................14

*Citizens United v. FEC*, 558 U.S. 310 (2010)................... 3, 10, 11, 12, 14

*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264 (1821) ................................16

FEC v. Wisconsin Right to Life, 551 U.S. 449 (2007)............................15

*McCutcheon v. FEC*, 572 U.S. 185 (2014)........................................12, 15

*Republican Party of La. v. FEC*, 219 F. Supp. 3d 86
    (D.D.C. 2016)................................................................................10

*SpeechNow.org v. FEC*, 599 F.3d 686 (D.C. Cir. 2010) (en
    banc).................................................................................2, 13, 17

*U.S. v. Householder*, 137 F.4th 454 (6th Cir. 2025)............................... 8

*United States v. Menendez*, 132 F. Supp. 3d 635 (D.N.J.
    2015)............................................................................................ 8

### Statutes

18 U.S.C. § 201(b)(2) ............................................................................. 7

### Other Authorities

2012 Outside Spending, by Super PAC, OpenSecrets,
    https://perma.cc/2D9F-PPUP.......................................................20

2016 Outside Spending, by Super PAC, OpenSecrets,
    https://perma.cc/Q3YV-M8YM....................................................20

ii

Albert Alschuler, et al., *Why Limits on Contributions to Super PACs Should Survive Citizens United*, 86 Fordham L. Rev. 2299 (2018) ....................................................2, 3

Bill of Indictment, *U.S. v. Lindberg*, No.19-cr-22, ECF No. 3 (W.D.N.C. Mar. 18, 2019).......................................................... 9

*Billionaire Timothy Mellon Has Poured $165 Million into 2024 Elections*, OpenSecrets (Aug. 23, 2024), https://perma.cc/PXJ5-DC32........................................................17

Brennan Center for Justice, Megadonors Playing Larger Role in Presidential Race, FEC Data (Nov. 1, 2024), https://perma.cc/AX7V-DYP4........................................................18

David Meyers et al., "By The Numbers: 15 Years of *Citizens United*," OpenSecrets, https://perma.cc/YB35-NTED .......................................................20

Federal Election Commission, *Limits Adjusted for 2023-2024*, https://perma.cc/6L2L-2QPF...............................................17

*Here's One White House Hopeful Who Wants to Get Big Money Out of Politics*, Reuters (Apr. 18, 2015), https://perma.cc/9FJN-Q5UA .......................................................19

Indictment, *U.S. v. Vazequez-Garced*, No. 22-cr-0342, ECF No. 3 (D.P.R. Aug. 3, 2022) .......................................................... 9

*John McCain Predicts "Huge Scandals" in the Super PAC Era*, Huffpost (Mar. 27, 2012), https://perma.cc/CBQ8-82SK ("What we have done is made a contribution limit a joke.") ...............................................19

Letter from Attorney General Holder to Senator Reid (June 16, 2010), https://perma.cc/8TVG-6A8A ..............................17

*Money, Power, and the Influence of Ordinary People*, Pew Research Center (Sep. 19, 2023), https://perma.cc/G2X8-6JUY .......................................................19

MUR #7099: Suffolk Construction Company, Inc., *Fed. Elec. Comm'n*, https://perma.cc/5PZP-DP5S................................... 9

*Remarks by President Biden in a Farewell Address to the Nation*, The White House (Jan. 15, 2025), https://perma.cc/WL8V-HACH ......................................................18

*Transcript of the Republican Debate in Florida*, N.Y. Times (Mar. 11, 2016), https://perma.cc/HCR5-JM7L....................19

## INTEREST OF THE AMICI CURIAE[1]

Amici Albert Alschuler, Laurence Tribe, and Norman Eisen are three scholars and public servants who have devoted their careers to the study and practice of constitutional law, ethics in government, and the integrity of American democracy. Collectively, they have served in several federal administrations and taught generations of lawyers at Harvard, the University of Chicago, and elsewhere about the First Amendment, the rule of law, campaign finance, governmental ethics, and more. Their affiliations are listed for identification purposes only. Specifically:

- **Albert W. Alschuler** is the Julius Kreeger Professor Emeritus of Law and Criminology at the University of Chicago Law School.

- **Laurence H. Tribe** is the Carl M. Loeb University Professor Emeritus at Harvard Law School.

---

[1] In accordance with FRAP Rule 29(a)(2), amici confirm they have permission from all parties to file this brief. In accordance with FRAP Rule 29(a)(4)(E), amici state that no party's counsel authored the brief in whole or in part, and that no party, party's counsel, or person other than amici and undersigned counsel contributed money intended to fund preparing or submitting this brief.

1

- **Norman L. Eisen** is a senior fellow at the Brookings Institution and former U.S. Ambassador to the Czech Republic and Special Counsel to the President for Ethics and Government Reform.

In 2018, amici jointly published (with co-author Richard Painter) *Why Limits on Contributions to Super PACs Should Survive Citizens United*, 86 Fordham L. Rev. 2299 (2018). That article argued that the D.C. Circuit's decision in *SpeechNow.org v. FEC*, 599 F.3d 686 (D.C. Cir. 2010) (en banc), was wrong in law, logic, and experience. This brief draws on that analysis and on subsequent developments that confirm the thesis of that article.

Amici (and their counsel) have no financial interest in the outcome of this case. Their interest lies solely in restoring constitutional coherence to campaign-finance jurisprudence and vindicating legislators' power to protect the integrity and perceived integrity of elections. They accordingly submit this brief to aid the Court's thinking as it considers the important questions presented by this appeal.

## SUMMARY OF ARGUMENT

The legal regime created by *SpeechNow.org v. FEC* and its progeny of unregulated contributions to nominally independent political groups

2

has no basis in the Constitution, in precedent, or in common sense. It rests on a single mistaken piece of reasoning that has never been endorsed by the U.S. Supreme Court: that because *Citizens United v. FEC*, 558 U.S. 310 (2010), said that independent *expenditures* cannot corrupt, *contributions* to nominally independent groups that make such expenditures also cannot corrupt. That syllogism was created by the D.C. Circuit soon after *Citizens United* with minimal briefing, argument, and evidentiary support. It was wrong at the time, and the consequences of fifteen years of unregulated contributions have confirmed that conclusion. This brief, which follows from the 2018 law review article on this topic co-authored by amici here and cited above, discusses the difficulties posed by the *SpeechNow* line of cases.

First, *SpeechNow*'s logic does not hold up. Contributions to so-called "independent expenditure committees" can and do create both actual and apparent quid pro quo corruption even when these committees' spending does not corrupt. The corruption arises from the donor's act of giving, not the recipient's later spending. Several prosecutions for bribery have explicitly recognized as much, and the federal courts should no longer ignore those cases.

3

Second, the D.C. Circuit misread *Citizens United*. The statement it treated as dispositive—that independent expenditures "do not give rise to corruption or the appearance of corruption"—was dictum, not holding. *Citizens United* decided only that Congress could not restrict corporate *expenditures* based on the speaker's corporate form. It expressly left undisturbed the constitutionality of *contribution* limits.

Third, *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam), drew a constitutional distinction between contributions and expenditures for good reason. Expenditures, like direct speech, are "at the core of the First Amendment." *Id.* at 44–47. Contributions, by contrast, are analogous to "low-value" speech, partly because "the transformation of contributions into political debate involves speech by someone other than the contributor." *Id.* at 21. As a later opinion noted, "'Speech by proxy' . . . is not the sort of political advocacy that this Court in *Buckley* found entitled to full First Amendment protection." *Cal. Med. Ass'n v. FEC*, 453 U.S. 182, 196 (1981) (plurality op.) (quoting *Buckley*, 424 U.S. at 21). Moreover, contributions pose unique risks of quid pro quo corruption. *See Buckley*, 424 U.S. at 46–47. The distinction between a legislature's ample ability to regulate contributions and its comparatively narrow ability to

4

regulate expenditures survives *Citizens United* and supports reasonable limits on contributions to super PACs.

Finally, evidence from campaigns since 2010 vindicates *Buckley*'s logic. The explosion of super PAC spending—funded by a handful of donors writing massive checks—has produced exactly what *Buckley* sought to prevent: the appearance, and in many cases the reality, of government beholden to private wealth. No legislator voted for this regime. Rather, the decision in *SpeechNow* created it. The claim that the Constitution requires it should be rejected.

## ARGUMENT

**I.   The *SpeechNow* Syllogism Between Expenditures And Contributions Is Incorrect As A Matter Of Law And Logic.**

At the outset, the *SpeechNow* court's logic does not hold up on its own terms. The Court reasoned that because *Citizens United* declared that independent *expenditures* do not give rise to corruption or the appearance of corruption, *contributions* to those same groups also cannot corrupt or appear to corrupt. The error lies in conflating an act of *giving* with an act of *spending*. The court provided no reason for conflating the two things, and in fact contributions and expenditures have different value under the First Amendment and pose different dangers of

5

corruption. A political contribution is an act of conferral: the transfer of something of value to another person or entity with the understanding that it will be used to influence an election. By contrast, an independent expenditure is an act of expression: the spending of a person or group's own funds to advocate a position.

The Supreme Court has recognized this categorical difference for nearly half a century, beginning with *Buckley*. In *Buckley*, the Court upheld limits on contributions precisely because they "entail[] only a marginal restriction upon the contributor's ability to engage in free communication" and because "the integrity of our system of representative democracy is undermined" when large contributions "are given to secure a political quid pro quo." 424 U.S. at 21, 26–27. The act of giving a large sum to a political campaign creates a sense of gratitude and obligation—what the Court called "the actuality and appearance of corruption." *Id.* at 26. By contrast, *Buckley* struck down limits on *expenditures* because spending one's own money on one's own speech does not pose a comparable quid pro quo risk. *Id.* at 47.

The D.C. Circuit in *SpeechNow* ignored this foundational distinction. It treated the two acts as indistinguishable for constitutional

6

purposes. But the potential for corruption from a campaign contribution does not disappear merely because it passes through an intermediary labeled "independent." To the contrary: at the moment of the contribution, a donor provides something of enormous value to a political actor or a cause closely associated with that actor. The entity spending the money may be legally "independent" from the candidate, but the donor's purpose, and the candidate's gratitude, are not.

The federal bribery statutes provide a useful window into how quid pro quo corruption can occur. Under 18 U.S.C. § 201(b)(2), officials commit bribery when they accept "anything of value personally or for any other person or entity" in exchange for being influenced in the performance of an official act. The statute's text makes clear that the corrupt exchange occurs even if the money goes to someone other than the official, because the contribution can benefit "any other person or entity" in addition to the principal. That makes sense, because the corruption lies in how the donation of a thing of value affects an official's conduct.

The prosecution of Senator Robert Menendez in 2015 illustrates how super PAC contributions can corrupt even when super PAC

expenditures do not. In *United States v. Menendez*, 132 F. Supp. 3d 635 (D.N.J. 2015), prosecutors alleged that Senator Robert Menendez received lavish gifts and large super PAC contributions from Dr. Salomon Melgen in exchange for official favors. The defendants moved to dismiss the super PAC counts, arguing that contributions to an independent-expenditure committee could not be bribes because such committees are legally uncoordinated with candidates. The court disagreed. It recognized that "[a] donation to a Super PAC can be a 'thing of value' under 18 U.S.C. § 201." *Id.* at 639.

The *Menendez* case exposes the flaw in *SpeechNow*'s logic. If a contribution to an independent group were, by law, incapable of corrupting, then the government could not constitutionally prosecute an official who accepted such a bribe. A corrupt senator could simply say, "Pay the money to my super PAC instead." Yet that is not the law, as the *Menendez* court correctly concluded.[2]

---

[2] At least three other bribery prosecutions have proceeded despite the fact that the alleged corrupting act was a contribution to a super PAC or independent expenditure group. *See U.S. v. Householder*, 137 F.4th 454, 464 (6th Cir. 2025) (affirming bribery conviction where facts showed quid pro quo donations to independent group); Bill of Indictment, *U.S. v.*

As these bribery prosecutions show, those seeking political influence use independent groups just as they would official candidate committees. The FEC has also recognized that these arrangements can result in corruption. For instance, federal contractors are (sensibly) barred by statute from making contributions to candidates. So companies instead contribute large sums to super PACs supporting those candidates—at least one of which was punished by the FEC for it. *See* MUR #7099: Suffolk Construction Company, Inc., *Fed. Elec. Comm'n*, https://perma.cc/5PZP-DP5S. Under the *SpeechNow* court's theory, though, this should have been a flawless workaround to bribery laws: directing money to a candidate's super PAC, according to the court's unsupported *ipse dixit*, can never corrupt or give rise to the appearance of corruption. And yet the FEC found the opposite. The bribery prosecutions and FEC sanction are illuminating, but surely the few that are caught and prosecuted are dwarfed by the very many that are not.

---

*Lindberg*, No.19-cr-22, ECF No. 3 (W.D.N.C. Mar. 18, 2019); Indictment, *U.S. v. Vazequez-Garced*, No. 22-cr-0342, ECF No. 3 (D.P.R. Aug. 3, 2022).

The prosecutions are viable because as long as a candidate sees a contribution itself as a thing of value, its corrupting effect does not depend on how or whether it is spent. *See Republican Party of La. v. FEC*, 219 F. Supp. 3d 86, 97 (D.D.C. 2016) (three-judge district court) (Srinivasan, J.), *aff'd*, 581 U.S. 989 (2017) (mem.) ("[T]he inducement occasioning the prospect of indebtedness on the part of a federal officeholder is not the spending of the money by a political party. The inducement comes from the contribution of soft money to the party in the first place."). The contribution in *Menendez* would have corrupted even if the super PAC that received it never spent it or donated it to the Red Cross. Major donors sometimes gain major influence; the managers who make super PAC spending decisions, not so much.

## II.    The Statement in *Citizens United* That *SpeechNow* Relied on Was Dictum.

*SpeechNow*'s flawed logic rests entirely on a single sentence in *Citizens United*: "We now conclude," wrote the Supreme Court majority, "that independent expenditures, including those made by corporations, do not give rise to corruption or the appearance of corruption." 558 U.S. at 357. The D.C. Circuit read that sentence as a binding holding that entirely eradicated Congress's anticorruption interest with respect to any

10

independent spending. The Court then extended the sweep of that sentence to encompass contributions to groups that engage in such spending. This interpretation was wrong. The language the D.C. Circuit quoted from *Citizens United* was *dictum*. It was unnecessary both to *Citizens United*'s reasoning and to its result. Treating it as binding law was a profound analytical mistake that has greatly damaged our political system.

The central question in *Citizens United* was whether the federal government could bar a nonprofit corporation from using its general treasury funds to produce a political film critical of a candidate. The challenged statute prohibited corporations and unions from making "independent expenditures" expressly advocating for or against federal candidates. The government argued that use of the corporate form justified a ban that clearly could not have applied to individuals or unincorporated groups. The Court, however, held that "the Government may not suppress political speech on the basis of the speaker's corporate identity." 558 U.S. at 349. That narrow but important conclusion fully resolved the case. Once the Court held that speech could not be restricted

11

simply because a group had incorporated, there was no need to address whether expenditures in general were corrupting.

To be sure, the *Citizens United* majority discussed whether independent expenditures generally could corrupt. It said, in one fateful sentence, "that independent expenditures, including those made by corporations, do not give rise to corruption or the appearance of corruption." 558 U.S. at 357. But that statement was neither necessary nor logically connected to the judgment striking down the corporate expenditure ban.[3] And while opining on topics not necessary for the *Citizens United* decision, the Court noted that "contribution limits, unlike limits on independent expenditures, have been an accepted means to prevent quid pro quo corruption." *Id.* at 359 (citation omitted). *Citizens United* thus reaffirmed *Buckley*'s core distinction two months before *SpeechNow* insisted that contributions to super PACs are indistinguishable from expenditures by super PACs.

---

[3] Four dissenting justices in a later case described this statement as "an overstatement" or "dictum." *McCutcheon v. FEC*, 572 U.S. 185, 261 (2014) (Breyer, J., dissenting).

### III.  *SpeechNow* **Misinterpreted the Dictum on Which it Relied.**

The decision in *SpeechNow* not only depended on dictum but also interpreted that dictum as a broader pronouncement than the Supreme Court meant it to be. In *SpeechNow*, the D.C. Circuit wrote: "The [Supreme] Court held that the government has *no* anti-corruption interest in limiting independent expenditures." *SpeechNow*, 599 F.3d at 693 (emphasis in the original). Its decision depended on reading the italicized word for all it might be worth. If the Supreme Court had simply declared the anti-corruption interest *insufficient* to justify a restriction of independent expenditures, whether that interest could justify a limitation of super PAC contributions under *Buckley*'s less demanding standard for contributions would have remained unresolved. But the D.C. Circuit declared that no balancing was necessary and no issue was open. Whatever the standard of review might be, the court said, "something . . . outweighs nothing every time." *Id.* at 695.

*SpeechNow* thus depended on the proposition that independent expenditures do not corrupt *at all*. But the *Citizens United* dictum should not be so interpreted in light of other, similar statements by the Supreme Court and members of the *Citizens United* majority. Consider:

13

1. Three sentences before its dictum, *Citizens United* declared: "The anticorruption interest is not sufficient to displace the speech in question." *Citizens United*, 558 U.S. at 357. The Court moved from its initial statement to its assertedly broader dictum without noting or acknowledging any difference between them.

2. Only the initial statement declaring the anticorruption interest *insufficient* would have been consistent with *Buckley*, for that decision did not say or intimate that independent expenditures cannot corrupt. *See Buckley*, 424 U.S. at 45 ("We find that the government interest in preventing corruption and the appearance of corruption is *inadequate* to justify § 608(e)(1)'s ceiling on independent expenditures.") (emphasis added); *id.* at 46 ("The independent advocacy restricted by this provision does not presently appear to pose dangers of real or apparent corruption *comparable* to those identified with large campaign contributions.") (emphasis added).

3. Less than a year before *Citizens United*, the author of the majority opinion, Justice Kennedy, wrote another majority opinion that illustrated and depended on the corrupting effect of independent expenditures. In *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), the Court held it a violation of the Due Process Clause for a state supreme court justice to hear a case in which a business executive had a substantial financial interest. The executive had supported the justice's election with more than $3 million in contributions and independent expenditures, and the Court ruled that this support created a "serious risk of actual bias." *Id.* at 884.

   *Citizens United* distinguished *Caperton* on the ground that the remedies at stake in the two cases were different. *Citizens United,* 558 U.S. at 360. But if the

14

benefactor's independent expenditures could not have corrupted at all, no remedy would have been necessary.

4.  In 2007, two members of the *Citizens United* majority, Chief Justice Roberts and Justice Alito, observed that independent expenditures can be highly corrupting. *See FEC v. Wisconsin Right to Life*, 551 U.S. 449, 478 (2007) (Roberts, C.J., joined in relevant part by Alito, J.) ("[I]t may be that, in some circumstances, 'large independent expenditures pose the same dangers or actual or apparent quid pro quo corruption as do large contributions.'"); *id.* ("We have suggested that this interest might . . . justify limiting electioneering *expenditures*.") (emphasis in the original).

5.  Two years after *Citizens United*, four members of the *Citizens United* majority again indicated that independent expenditures can corrupt. In *McCutcheon*, 572 U.S. at 214, they quoted *Buckley*'s statement that "[t]he absence of prearrangement and coordination of an expenditure with the candidate or his agent . . . undermines the value of the expenditure to the candidate." Then they added: "But probably not by 95 percent."

As this context illustrates, if *Citizens United* truly meant that independent expenditures can never corrupt "as a matter of law," then several of the Court's other cases in this area are inexplicable. By treating that line of dictum as binding law and then extending it to a new context, the *SpeechNow* court started a cascade of lower court opinions that fail to recognize the Supreme Court's own instructions about how to interpret its decisions. The Supreme Court, after all, has long recognized that

15

"general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399 (1821). Lower courts thus may not extract broad legal rules from language divorced from the issues actually decided. Yet that is precisely what *SpeechNow* did. It construed an aside in *Citizens United* to essentially overrule *Buckley*'s holding that expenditure limits are subject to the "exacting scrutiny" that governs restrictions on "political expression," 424 U.S. at 44–45, while contribution limits "entail[] only a marginal restriction upon the contributor's ability to engage in free communication." *Id.* at 20.

## IV. Experience Since *SpeechNow* Has Revealed the Corrupting Effect of Unlimited Contributions to Super PACs.

In 1976, *Buckley* upheld the Federal Election Campaign Act's limits on contributions to candidates, but, in 2010, *SpeechNow* struck down the Act's limit on contributions to independent expenditure groups. Attorney General Eric Holder explained in a letter to Senator Harry Reid why the government failed to seek Supreme Court review of the *SpeechNow* ruling.: "[T]he court of appeals' decision will affect only a small subset of federally regulated contributions." Letter from Attorney General Holder

16

to Senator Reid (June 16, 2010), https://perma.cc/8TVG-6A8A. It is now clear that this prediction was wrong.

In the 2024 election cycle, the person who gave the most money to super PACs was Timothy Mellon. Mellon could not have contributed as much as $7,000 to his preferred presidential candidate's own campaign. *See* Federal Election Commission, *Limits Adjusted for 2023-2024*, https://perma.cc/6L2L-2QPF. According to the Supreme Court, Mellon had no First Amendment right to make a $7,001 contribution because it posed a danger of corrupting or creating the appearance of corruption. *See Buckley*, 424 U.S. at 26.

But Mellon could and did contribute $125 million to a super PAC whose only mission was to promote the election of his favored candidate. *See Billionaire Timothy Mellon Has Poured $165 Million into 2024 Elections*, OpenSecrets (Aug. 23, 2024), https://perma.cc/PXJ5-DC32. According to the D.C. Circuit, the First Amendment protected Mellon's right to make this contribution because it created no risk of corruption or the appearance of corruption. *See SpeechNow*, 599 F.3d at 695.

17

Mellon was far from the only multi-million-dollar super PAC donor during that election cycle. Just before the 2024 election, the Brennan Center for Justice reported:

> This election, the biggest super PACs supporting the major party nominees for president have together taken in $865 million from donors who each gave $5 million or more. That's more than double the amount by this point in 2020, which was $406 million. This biggest-spending category of donors has provided more than 75 percent of the funding to presidential super PACs in the 2024 election, up from 63 percent in 2020.

Brennan Center for Justice, Megadonors Playing Larger Role in Presidential Race, FEC Data (Nov. 1, 2024), https://perma.cc/AX7V-DYP4.

Candidates and office holders of both parties have denounced the *SpeechNow* regime of unlimited political contributions, and their statements make the appearance of corruption unmistakable. In his *Farewell Address to the Nation*, President Biden declared: "[A]n oligarchy is taking shape in America of extreme wealth, power, and influence that literally threatens our entire democracy." *Remarks by President Biden in a Farewell Address to the Nation*, The White House (Jan. 15, 2025), https://perma.cc/WL8V-HACH. Biden echoed prior statements by President Trump, who put the point more bluntly in 2016: "[T]hese super

18

PAC's are a disaster . . . . Very corrupt. . . . There is total control of the candidates." *Transcript of the Republican Debate in Florida*, N.Y. Times (Mar. 11, 2016), https://perma.cc/HCR5-JM7L. Others have also expressed that same sentiment, such as Republican Senators John McCain, *John McCain Predicts "Huge Scandals" in the Super PAC Era*, Huffpost (Mar. 27, 2012), https://perma.cc/CBQ8-82SK ("What we have done is made a contribution limit a joke."), and Lindsey Graham, *Here's One White House Hopeful Who Wants to Get Big Money Out of Politics*, Reuters (Apr. 18, 2015), https://perma.cc/9FJN-Q5UA ("[B]asically 50 people are running the whole show.")

More than 80 percent of both Republicans and Democrats tell pollsters that large donors have too much influence on members of Congress, and more than 70 percent of both Republicans and Democrats say that the people have too little. *Money, Power, and the Influence of Ordinary People*, Pew Research Center (Sep. 19, 2023), https://perma.cc/G2X8-6JUY. The approval by 74.9% of Maine voters of the measure whose constitutionality is now challenged shows that the principle underpinning the *SpeechNow* ruling is false. Unlimited

19

contributions to super PACs have created an overwhelming appearance of corruption and have undermined our democracy.

The changes that *SpeechNow* brought came on quickly. When *SpeechNow* was decided in 2010, super PACs did not exist. By the next election cycle, they dominated federal politics. In 2012, super PACs raised over $830 million and spent nearly $620 million. *See* 2012 Outside Spending, by Super PAC, OpenSecrets, https://perma.cc/2D9F-PPUP. By 2016, those figures had more than doubled: super PACs spent over $1 billion, with 80 percent of that spending concentrated in committees supporting just a handful of presidential candidates. *See* 2016 Outside Spending, by Super PAC, OpenSecrets, https://perma.cc/Q3YV-M8YM. And in 2024, total super PAC spending in federal elections had exceeded $4 billion, dwarfing the totals from traditional party committees and candidate campaigns combined. *See* David Meyers et al., "By The Numbers: 15 Years of *Citizens United*," OpenSecrets, https://perma.cc/YB35-NTED.

As all of this evidence illustrates, the *SpeechNow* line of cases transformed campaign-finance law in ways no Supreme Court majority ever endorsed and no legislature ever approved. The Court's stray line in

*Citizens United* about independent *expenditures* became the foundation for a new constitutional right: the supposed right to *contribute* unlimited sums to groups supporting federal candidates. That right appears nowhere in the First Amendment's text or history. To the contrary: it was rejected in *Buckley*. Instead, it was conjured from dictum in *SpeechNow*, and other decisions followed suit. This Court can, after fifteen illuminating years, recognize and correct the mistake.

## CONCLUSION

The district court's judgment should be reversed.

Dated: October 29, 2025

Respectfully submitted,

*/s/ Jason Harrow*

Jason Harrow
GERSTEIN HARROW LLP
12100 Wilshire Blvd. Suite 800
Los Angeles, CA 90025
(323) 744-5293
jason@gerstein-harrow.com

*Attorneys for Amici*

21

## CERTIFICATE OF COMPLIANCE

Counsel certifies that this brief complies with the word limitation set forth in the Federal Rules of Appellate Procedure because it contains 4,027 words, according to the word-processing system used to prepare this brief, calculating by the word processing system used in its preparation, and excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Century Schoolbook 14-point font.

*/s/ Jason Harrow*

*Attorney for Amici*